## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | |
| | : | |
| **MIKEL D. JONES and** | : | No. 11-261 |
| **DONA NICHOLS JONES** | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                        **October 17, 2011**

The United States has charged Mikel Jones and Dona Nichols Jones, husband and wife, with a conspiracy to commit mail fraud, wire fraud, and money laundering. Jones and Nichols Jones both wish to be represented by David Garvin, Esquire. The Government, however, recognizing that joint representation poses significant risks given the potential conflicts that may arise, has moved to disqualify Garvin from representing Nichols Jones. Courts do not lightly reject a Defendant's freely chosen selection of counsel, but this Court must ensure that Nichols Jones receives the benefit of a lawyer who is able to zealously represent her, and here that might mean acting against her husband's—and alleged co-conspirator's—best interests. To ensure that both Defendants receive adequate representation in this case, the Court grants the Government's motion and disqualifies Garvin from representing Nichols Jones.

## I.        BACKGROUND

On May 3, 2011, Mikel Jones was indicted for mail and wire fraud and money laundering. The indictment charged that Jones devised a scheme whereby he received a loan from Minority Venture Partners Ltd., a venture capital firm funded by the Commonwealth of Pennsylvania. The purpose of the fund was to make loans to and investments in promising minority businesses in the

Philadelphia area. To that end, Jones secured $150,000 for his law firm. According to the Government, Jones promised to use the funds to expand his law firm and to fund working capital. Jones, it is alleged, used the loans for personal expenses, including groceries, sports tickets, and trips. To accomplish this scheme, the Government charges, he laundered money through his and his wife's personal bank accounts and credit card accounts. When the loan came due, Jones purportedly lied and said he did not have the funds to repay the loan, despite the fact that he was lavishing funds on luxury items. The Government contends that based on false statements about his finances, Jones convinced the venture capital fund to accept $20,000 as full repayment for the loan. A superseding indictment issued against Jones on July 5, 2011, added an additional money laundering count and five wire fraud counts, while also eliminating one mail fraud count.

A second superseding indictment was issued on September 13, 2011, charging Jones and Nichols Jones with conspiracy in addition to mail fraud, wire fraud, and money laundering. The basic scheme charged in the first indictment is recounted in the second superseding indictment, but the second superseding indictment adds numerous details. It charges that Nichols Jones was involved in the administration of the Mikel Jones Law Firm, including preparing proposed budgets containing law firm expenses and coordinating the payments of those expenses with a lender in New York from whom Jones had obtained a business line of credit. The Government claims that the couple used shell companies controlled by Jones to steal hundred of thousands of dollars from this New York lender. Specifically, the Government contends that Defendants created fraudulent check requests and invoices in an effort to solicit funds from the New York lender to pay for personal expenses. Once the lender paid the invoices, the Joneses allegedly transferred the fraudulently received funds to their own bank accounts and used them to pay personal expenses, including season tickets for the

Philadelphia 76ers. Defendants purportedly told their New York lender that they needed $160,000 to repay a debt and requested that the lender issue a check to K.M., who, unbeknownst to the lender, was Defendants' daughter. After the lender wrote the check, Nichols Jones wrote a $132,000 check to buy a cashier's check. Jones then deposited the cashier's check to a law firm trust account to replenish client funds he had previously taken. Nichols Jones used the rest of the money to pay her American Express bills. In total, Defendants are charged with swindling over $456,000 from the New York lender between January of 2008 and April of 2009.

Garvin entered his appearance on behalf of Jones on May 24, 2011, and has represented him through all stages of the criminal proceeding, including a hearing on a motion to suppress. On September 21, 2011, Nichols Jones made her initial appearance, and after a full colloquy, Garvin was permitted to represent her for the arraignment only. The Government's motion to disqualify followed shortly thereafter.

## II.    DISCUSSION

Every criminal defendant is entitled to a lawyer. *Gideon v. Wainwright*, 372 U.S. 335 (1963). Furthermore, the Sixth Amendment to the United States Constitution guarantees defendants conflict-free representation. *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). A likelihood of conflict arises when a lawyer jointly represents criminal co-defendants, although joint representation is not a conflict of interest per se. *See United States v. Lebed*, Crim. A. No. 05-362, 2005 WL 1971877, at *6 (E.D. Pa. Aug. 12, 2005) (citing *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)); *see also United States v. Joyce*, 330 F. Supp. 2d 527, 529 (E.D. Pa. 2004) ("Although joint representation of criminal defendants does not per se give rise to an actual conflict, it should be

3

carefully scrutinized for its impact, not only on the defendants' right to conflict-free counsel, but also in the public's interest in the fair and just administration of justice."). If a conflict arises due to joint representation, the right to separate counsel may be waived, provided the pitfalls of joint representation are explained to a defendant at the earliest possible time in the proceeding. *United States v. Laura*, 667 F.2d 365, 371 (3d Cir. 1981). In some cases, however, a waiver is inadequate. *Joyce*, 330 F. Supp. 2d at 530. The Federal Rules of Criminal Procedure require that the court "promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation."[1] Fed. R. Crim. P. 44(c). The court must also take appropriate measures to protect each defendant's right to counsel. *Id*.

Generally, a defendant has the right to select and retain a lawyer of his or her choosing. *See United States v. Wheat*, 486 U.S. 153, 158-59 (1988). The right to choose an attorney is not inviolate; the Sixth Amendment guarantees an effective advocate for a criminal defendant, but it does not mandate that a criminal defendant is always entitled to his or her preferred attorney. *Id*. at 159. Although a court must recognize a presumption in favor of a defendant's counsel of choice, a showing of a serious potential for conflict is sufficient to overcome that presumption. *Wheat*, 486 U.S. at 164. A trial court has discretion in evaluating whether the facts and circumstances of a case overcome the presumption. *Id*.

In support of its motion to disqualify, the Government points out a number of potential areas

---

[1] A hearing on this matter would be futile. Nichols Jones has sworn before this Court that she was informed of the risks of joint representation and waives any conflicts that may arise. Repeating these statements in court does not address the problems the Court has with joint representation here.

of concern if Garvin were permitted to represent both Defendants: (1) neither Defendant will be able to explain his or her behavior without implicating the other spouse; (2) Garvin cannot offer unvarnished advice to Nichols Jones on whether to cooperate, plead guilty, or go to trial because he would have to advise her to implicate his other client; (3) if Nichols Jones elects to go to trial, Garvin's cross-examination may be hampered by his joint representation and by his knowledge of privileged communications; (4) pleading guilty may lower Nichol Jones's sentencing guidelines but "her absence at trial might affect trial strategy and optics for Jones"; (5) if convicted, Garvin would be unable to argue the relative culpability of his clients at sentencing. (Gov't's Mot. to Disqualify at 3-5, 8-9.)

In opposition to the Government's motion, Jones and Nichols Jones submitted matching sworn statements that assert that both Defendants are aware of their right to conflict-free counsel, that neither Defendant believes there are any conflicts, and that both agree to waive any such conflicts that may arise in the future. (Nichols Jones Sworn Statement ¶¶ 10-11; Jones Sworn Statement ¶¶ 6-8.) Nichols Jones also contends that it is in her best interests to present a united front with her husband, that this could best be done by using the same attorney as her husband, that she is pleased with Garvin's representation and does not want to start anew with another lawyer, and that she has no intention of pleading guilty. (Nichols Jones Sworn Statement ¶¶ 3, 5-6, 8, 12.)

It is possible that not a single one of the parade of possible conflicts the Government cites would materialize. Conflicts at sentencing presume a conviction, the Court is unaware if a deal has been offered to either Defendant, and both Defendants may assert their right to remain silent and avoid taking the witness stand. Additionally, Defendants may knowingly and voluntarily determine that "Till death do us part" requires a united front in which they stand together despite the possibility

of conviction. An indictment is not a divorce decree.

The Court nonetheless finds that the serious potential for conflict warrants disqualification, notwithstanding Defendants' assertions that no conflicts exist and that they will waive any that might arise. *See Joyce*, 330 F. Supp. 2d at 530 (noting that Sixth Amendment does not mandate an absolute rule that a waiver will cure all conflicts or act as a "prophylactic for the rise of potential conflicts which may be created by joint representation") Trials are unpredictable and wise litigation strategy is a fluid concept. *See United States v. Dolan*, 570 F.2d 1177, 1181-82 (3d Cir. 1978) (noting difficulties courts face when deciding adequacy of waiver). Today's waiver can easily turn into tomorrow's argument for an ineffective assistance of counsel claim, even if Nichols Jones promises that she will not later change her mind if she loses at trial. (*See* Nichols Jones Sworn Statement ¶ 14.) Promising not to lament the decision to waive conflict-free representation is much more palatable prior to a conviction. This Court prefers one trial conducted fairly and with counsel free of conflicts rather than one trial with a defendant's preferred lawyer followed by the possibility of motions and litigation aiming to undo her choice of counsel.

There are too many potential problems raised by Garvin's representation of Jones and Nichols Jones to allow for joint representation to continue. For example, the Court does not know how counsel can effectively communicate with Nichols Jones about the appropriateness of accepting a plea or the decision to commence plea negotiations, because those talks necessarily implicate the guilt of Garvin's other client, Jones. And should one or both Defendants be convicted, sentencing should, in the name of zealous advocacy, involve finger-pointing in an attempt to receive a lesser sentence. Additionally, because the Joneses are married, the applicability of the marital privilege may also become an issue. *Joyce*, 330 F. Supp. 2d at 530. Counsel will not be able to advise one

defendant whether to testify or to object to testimony without prejudicing the other spouse. *Id*.

This Court is worried not only about the potential for conflicts, but about Garvin's ability to properly and candidly discuss litigation strategy with his clients if he represents husband and wife charged with being active participants in a conspiracy involving a business in which they both purportedly played a substantial role. The challenges of joint representation are exacerbated here because this is a charged conspiracy against only two individuals. This presents a zero-sum situation in which the diminished responsibility of one defendant necessarily heightens the culpability of the other. Given these circumstances, the often difficult decision of whether a defendant should take the stand presents a question worthy of a law-school-examination hypothetical:  whether one spouse should testify against the other when they are alleged to be the only conspirators involved in criminal activity. How can Garvin offer sage advice to both Jones and Nichols Jones on this vital question? This Court's concerns are not eased by the simple statements of waiver included with Defendants' opposition, an opposition that fails to include a single case citation.

This case is very similar to *United States v. Lebed*, in which the Government moved to disqualify a defense attorney because he sought to represent a husband and wife charged with wire fraud, mail fraud, and money laundering as part of an alleged scheme to receive and misappropriate federal money awarded to students at a private school owned by the defendants. Although the Government posited an additional reason for disqualification, the court determined that defense counsel could not represent both husband and wife due to the possible conflicts that may arise. *Lebed*, 2005 WL 1971877, at *8. The court noted that the defendants could not make a knowing waiver of their rights because they could not yet fully understand the dangers posed by joint representation. *Id*. at *7. The trial judge also could not know how the proceedings would unfold,

further making joint representation fraught with problems. *Id*. Moreover, "these dangers are emphasized when the defendants, as in this case, are husband and wife who jointly participated in the operation of a business that is the focal point of the indictment." *Id*. Noting that the defendants might have a different recollection of events, might be tempted to blame the other, and that people possess a natural inclination to minimize their individual involvement when faced with incriminating facts, the court concluded that a lawyer representing both defendants could not offer truly independent advice. *Id*. The same reasoning applies here.

## III.    CONCLUSION

This Court must preserve Defendants' right to effective counsel and maintain the integrity of the criminal process. Choice of counsel must sometimes yield to adequacy of representation when potential conflict breeds insecurity over a lawyer's ability to be an effective advocate.

Garvin's representation of Jones and Nichols Jones, charged with conspiracy, is rife with potential conflicts. The Court takes Defendants' choice of counsel seriously and appreciates their stated desire to act in concert (which they can still accomplish through a joint defense agreement), but the hurdles joint representation poses here renders it impossible for this Court to accept a waiver. As Meatloaf once declared, "I would do anything for love, but I won't do that." Accordingly, the Government's motion to disqualify is granted, and Garvin is barred from representing both Jones and Nichols Jones. An Order consistent with this Memorandum will be docketed separately.