**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | |
| MIKEL D. JONES and | : | No. 11-261 |
| DONA NICHOLS JONES | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                 **February 7, 2012**

Following a jury trial, Mikel Jones was convicted of conspiracy, money laundering, mail fraud, and wire fraud. His wife, Dona Nichols Jones, was convicted of conspiracy, money laundering, and wire fraud. Presently before the Court is Defendants' motion for a judgment of acquittal or, in the alternative, for a new trial. For the reasons below, the Court denies the motion.

**I.       STANDARD OF REVIEW**

**A.       Rule 29**

Rule 29 provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed R. Crim. P. 29(c)(2). The court must view the evidence in the light most favorable to the prosecution and must uphold the verdict provided that any rational trier of fact could have found guilt beyond a reasonable doubt given the available evidence. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Defendants face an uphill battle under this "highly deferential standard." *United States v. Carbo*, 572 F.3d 112, 119 (3d Cir. 2009). A challenge to the sufficiency of the evidence supporting a jury verdict "should be confined to cases where the prosecution's failure is clear." *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (internal quotation marks omitted).

"Courts must be ever vigilant in the context of Federal Rule of Criminal Procedure 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133 (citing *United States v. Jannotti,* 673 F.2d 578, 581 (3d Cir. 1982) (en banc)).

**B.    Rule 33**

Rule 33 of the Federal Rules of Criminal Procedure permits a court to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Civ. P. 33(a) "[M]otions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003) (citing *United States v. Allen*, 554 F.2d 398, 403 (10th Cir. 1977)).

Unlike a Rule 29 motion, when considering a Rule 33 motion, a court does not view the evidence in the light most favorable to the government but rather exercises its own judgment in evaluating the government's case. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Nonetheless, "a district court 'can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *Johnson*, 302 F.3d at 150). A court must grant a new trial if it concludes that the trial was beset by cumulative errors that so infected the jury's deliberations that they substantially influenced the trial's outcome. *United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994).

2

## II.    DISCUSSION

### A.    Motion for New Trial

Defendants seek a new trial because this Court refused to reopen the record to allow them to introduce an email that they claim demonstrates that a government witness lied under oath. Brian Spira testified at trial that he was unaware that Mikel Jones had purchased basketball tickets through Comcast Spectacor and, furthermore, that Spira would not have approved a line of credit for the purchase of basketball tickets. After the Government and Defendants rested and the jury began deliberations, but before the jury rendered its verdict, counsel for Mikel Jones discovered an email from Mikel Jones to Brian Spira noting that of the $75,000 Mikel Jones sought, $7,000 was for Philadelphia Eagles season tickets. The email also said: "Please note sporting teams season tickets (eagles, 76ers, Heat, Dolphins) were entered under contract when original partners were involved, and deposits totally [*sic*] $50,000 would be lost if not honored." While the jury was deliberating, Defendants sought to reopen the record. According to Defendants, the jury should have been allowed to consider this email, and the Government was obligated to correct Spira's false testimony.

The Court refused to reopen the record, denied Defendants' renewed motion to reopen the record filed shortly thereafter, and faced with the issue again, now holds that the Court's refusal to reopen the record does not warrant a new trial.

The decision whether to reopen the record is left to the discretion of the trial court. *United States v. Coward*, 296 F.3d 176, 180 (3d Cir. 2002). However, courts should be extremely reluctant to grant reopenings. *United States v. Kithcart*, 218 F.3d 213, 219-20 (3d Cir. 2000). When faced with a motion to reopen, a district court should primarily focus on whether the party opposing reopening would be prejudiced if the record was reopened. *Id*. at 220. Thus, the timing of the motion to reopen

3

is critical; the likelihood of prejudice is greater if the case has already been submitted to the jury because the nonmoving party will not have an opportunity to respond and rebut the newly introduced evidence. *Coward*, 296 F.3d at 181 (citing *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985)). In addition to the timeliness of the motion, the district court should also consider the character of the evidence and the effect of granting the motion. *Coward*, 296 F.3d at 181. The Third Circuit has recognized the following considerations as relevant in deciding whether to reopen the record:

> The party moving to reopen should provide a reasonable explanation for its failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

*Coward*, 296 F.3d at 181 (citing *Blankenship*, 775 F.2d at 741).

Under this legal framework, Defendants fail to demonstrate that the record should have been reopened. Defense counsel admits that "[t]he defendants and their legal team searched the voluminous discovery for documents on this topic but inadvertently missed this specific email until the day after the defendants rested." (Defs.' Renewed Mot. to Reopen the Evidence [Defs.' Renewed Mot. to Reopen] ¶ 17.) As the Government notes in its opposition to Defendants' motion for a new trial, it was counsel for Defendants who sought a quick trial and repeatedly informed the Court that they were ready to try the case. Indeed, the Court held a status conference shortly before trial commenced and posed questions to counsel in open court to ensure that the trial could move forward without delay. The email at issue had been turned over to Defendants, and their lawyers represented to the Court that they had ample time to review the discovery in the matter. Given these

4

circumstances, the Court does not find counsel's explanation for the failure to find and introduce this email prior to the jury commencing deliberations reasonable.

More importantly, Defendants are overstating the import of the email. The email suggests that if Mikel Jones did not receive $7,000 for football tickets, he would lose deposits totaling $50,000 based on a previously agreed-upon deal. Thus, it is not clear that Spira perjured himself when he testified that Mikel Jones did not tell him that Jones intended to use money to buy sports tickets, that he bought basketball tickets from Comcast Spectacor, or that he would not have approved such a purchase. Assuming Spira reviewed the email, the expenditure could have been approved consistent with Spira's testimony at trial.

Finally, the Government would be prejudiced by admission of the email. Defendants suggest that the Court could have simply admitted the email and told the jury that it was inadvertently omitted. (Defs.' Renewed Mot. to Reopen ¶ 22.) The Court considers Defendants' suggestion overly simplistic. For one, admitting the email after the jury began deliberations would give the email distorted importance because of its admission so late in the case. Furthermore, the Court did not send all exhibits to the jury; the jury reviewed only those exhibits it requested. Offering the jury an additional exhibit without explanation and context would incorrectly highlight its importance to the case. Additionally, the Court could not admit an email as evidence and not allow questioning about that document. It is unclear if Spira even saw the email, let alone discussed it with anybody. Before painting Spira as a liar, as Defendants advocate, the Court is certain that the Government would ask Spira to explain the content and importance of the email.

For the above-stated reasons, the Court declines to grant Defendants a new trial because the Court refused their request to reopen the record.

5

**B.     Motion for Judgment of Acquittal**

Defendants argue that the Government failed to produce any evidence that they made any misrepresentations to the purported victim of Defendants' fraud, the Stillwater Asset Backed Fund ("Stillwater"). (Defs.' Mot. for J. of Acquittal or, in the Alternative, for a New Trial at 1.) The Government alleged that Jeff Dubin, CPA, was an agent of Stillwater, but failed to submit evidence of "this crucial allegation." (*Id.* at 1-2.) Defendants also contend that Defendants did not commit money laundering in April 2009 because Stillwater had stopped funding the line of credit it extended to the Mikel Jones Law Firm in 2008 and the check written from the Mikel Jones Law Firm in April 2009 came from funds he earned from settling cases, not from an illegal source. (*Id.* at 2.)

Addressing the April 2009 money laundering claim first, the Court finds that ample evidence existed to convict Defendants of this crime. The elements of the crime of money laundering are: (1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity; (3) knowledge that the transaction involves the proceeds of some unlawful activity; and (4) either an intent to promote the carrying on of specified unlawful activity or knowledge that the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. *United States v. Omoruyi*, 260 F.3d 291, 294-95 (3d Cir. 2001).

Spira testified that at the end of 2008 or beginning of 2009, Mikel Jones was expecting to receive money as a result of settling lawsuits on which he was working. Spira said that it was expected that Mikel Jones would repay the entire line of credit Stillwater had extended with the settlement proceeds. Spira testified that Mikel Jones reported to Spira and others that he had a problem turning over that money because he had borrowed money "off the street," and if Mikel

6

Jones did not pay back that money, "it's going to be a really, really big problem." (Nov. 1, 2011 Trial Tr. [Brian Spira Test.] at 36.) Spira took Jones's statement to mean "there was more than just a bank sending a default notice to him." (*Id*.) Eventually, Stillwater agreed that Mikel Jones remit everything minus approximately $160,000 that Mikel Jones needed. At trial, Dubin testified that Jones requested—and Dubin sent—a check in the amount of $160,000 made out to Krystal Mano, who is Defendants' daughter. (Nov. 1, 2010 Trial Tr. [Jeffrey Dubin testimony] at 43-44.) Mano and Dona Nichols Jones then took the check Dubin issued and deposited it into an account in both of their names. Dona Nichols Jones used those funds to purchase a $132,000 cashier's check payable to Mikel Jones, which he deposited into an account to replenish funds he had previously taken.

Thus, the Government presented sufficient evidence to prove beyond a reasonable doubt that Defendants laundered money. Defendants argue that the original source of the $160,000 was not generated from illegal activity. The fact that the proceeds of their illegal activities might have been commingled with funds Mikel Jones had a right to by virtue of settling lawsuits does not warrant overturning the convictions. *See United States v. Farrington*, 58 F. App'x 919, 923 (3d Cir. 2003) (citing *United States v. Sokolow*, 91 F.3d 396, 409 (3d Cir. 1996)) (noting that money laundering statute does not require Government to trace source of funds constituting criminal proceeds when commingled with funds from legitimate sources).

Finally, the Court rejects Defendants' argument that there is no evidence that Defendants defrauded Stillwater. Suffice it to say that the jury could have readily concluded that Defendants' misrepresentations caused Stillwater to distribute money to Defendants that, absent their fraud, it would not have paid.

7

**III.    CONCLUSION**

For the above-stated reasons, the Court denies Defendants' motion for judgment of acquittal, or, in the alternative, for a new trial. An order consistent with this Memorandum will be docketed separately.